UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JENNIFER M. KUHN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 1:20-cv-00452-SLC |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, *sued as Kilolo Kijakazi,* ) | |
| *Acting Commissioner of Social Security,*[1] ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Jennifer M. Kuhn appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB"). (ECF 1). For the following reasons, the Commissioner's decision will be AFFIRMED.

### I. FACTUAL AND PROCEDURAL HISTORY

Kuhn applied for DIB in July 2018, alleging disability as of January 16, 2018. (ECF 16 Administrative Record ("AR") 15, 171). Kuhn's claim was denied initially and upon reconsideration. (AR 80, 94). On January 22, 2020, administrative law judge ("ALJ") Kathleen Winters conducted an administrative hearing at which Kuhn, who was represented by counsel, and a vocational expert ("VE") testified. (AR 34-68). On February 24, 2020, the ALJ rendered an unfavorable decision to Kuhn, concluding that she was not disabled because she could perform a significant number of jobs in the national economy despite the limitations caused by

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, *see, e.g.*, *Butler v. Kijakazi*, 4 F.4th 498 (7th Cir. 2021), and thus, she is automatically substituted for Andrew Saul in this case, *see* Fed. R. Civ. P. 25(d).

her impairments. (AR 15-28). The Appeals Council denied Kuhn's request for review (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

Kuhn filed a complaint with this Court on December 8, 2020, seeking relief from the Commissioner's decision. (ECF 1). In her opening brief, Kuhn contends that: (1) the ALJ's step-five finding is not supported by substantial evidence because she failed to identify a significant number of jobs that Kuhn could perform despite her impairments; and (2) the ALJ should have found closed periods of disability from March 7, 2018, to March 14, 2019, due to her lumbar spine problems, and from August 16, 2018, to November 7, 2019, due to her psoriatic arthritis/psoriasis problems. (ECF 20 at 13). The Commissioner timely filed a response brief in opposition to Kuhn's arguments. (ECF 21). Kuhn, however, failed to file a reply brief, and her time to do so has now passed. (ECF 23).

At the time of the ALJ's decision, Kuhn was forty years old (AR 171), had a high school education and two years of college (AR 194), and had past work experience as a certified occupational therapy assistant and as a laborer and shipper in the manufacturing industry (AR 194-95). In her application, Kuhn alleged disability due to a herniated disc, arthritis, migraines, psoriasis, multi-level degenerative disc disease, two bulging discs, leg muscle weakness and numbness, and chronic back pain. (AR 193).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

2

The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the ALJ applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III.  ANALYSIS

*A.  The Law*

Under the Act, a claimant seeking DIB must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and

3

laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether she has a severe impairment, (3) whether her impairment is one that the Commissioner considers conclusively disabling, (4) whether she is incapable of performing her past relevant work, and (5) whether she is incapable of performing any work in the national economy.[2] *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

## B. The Commissioner's Final Decision

On February 24, 2020, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 15-28). At step one, the ALJ concluded that while Kuhn had fairly significant earnings in the first quarter of 2018 with a minimal amount of unemployment, such earnings did not appear consistent with work activity after her alleged onset day of January 16, 2018, and did not rise to the level of substantial gainful activity. (AR 17). At step two, the ALJ found that Kuhn had the following severe impairments: status post

---

[2] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks she can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

4

discectomy surgery at the L5-S1 level with stenosis and mild degenerative changes to the L3-L5 levels, and migraine headaches. (*Id.*). At step three, the ALJ concluded that Kuhn did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 20). The ALJ then assigned Kuhn the following RFC:

> [T]he claimant has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) except can occasionally climb stairs or ramps, stoop, kneel, crouch, crawl and she can balance commensurate with performing the activities outlined herein, and can never climb ladders, ropes, or scaffolds. Work with a moderate level of noise. Needs a cane to ambulate more than 50 feet; and work needs an option to sit or stand, changing positions no more frequently than every 30 minutes, while remaining on task.

(AR 20).

The ALJ found at step four that given the foregoing RFC, Kuhn could not perform her past relevant work as a skilled occupational therapy assistant. (AR 26). At step five, however, the ALJ concluded that Kuhn could perform a significant number of unskilled sedentary jobs in the national economy, including document preparer, with 47,000 jobs in the national economy; addresser, with 19,000 jobs in the national economy; and table worker, with 23,000 jobs in the national economy. (AR 27). Therefore, Kuhn's application for DIB was denied. (AR 27-28).

### C. The ALJ's Step-Five Determination

In her first argument, Kuhn challenges the ALJ's step-five determination. (ECF 20 at 17-19). As already explained, a plaintiff seeking DIB bears the burden of proof at steps one through four of the ALJ's sequential five-part inquiry; the burden then shifts to the Commissioner at step five. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). At this final step, the Commissioner must establish that the plaintiff's RFC allows her to engage in work found in "significant numbers" in the national economy. *Liskowitz v. Astrue*, 559 F.3d 736, 742-43 (7th

5

Cir. 2009); *see* 20 C.F.R. § 404.1566.

Kuhn argues that the ALJ failed to carry her burden to identify a significant number of jobs in the national economy that she is capable of performing despite the limitations caused by her impairments. (ECF 20 at 19). The ALJ concluded at step five that Kuhn was not disabled based on the VE's testimony that a hypothetical individual of Kuhn's age, education, work experience, and RFC could still perform a significant number of jobs in the national economy. (AR 26-27). Specifically, the VE testified that such individual could perform the following representative jobs: document preparer, 47,000 jobs in the national economy; addresser, 19,000 jobs in the national economy; and table worker, 23,000 jobs in the national economy. (AR 62-63). Kuhn contends that the ALJ failed to carry her step-five burden because the total number of representative jobs cited by the VE—89,000 jobs nationally—accounts for just .057% of the 154,482,000 total jobs in the national economy. (ECF 20 at 18 (citing *Sally S. v. Berryhill*, No. 2:18cv460, 2019 WL 3335033, at *11 (N.D. Ind. July 23, 2019)).

"The Seventh Circuit [Court of Appeals] has not affirmatively established the threshold for the number of jobs in the national economy that qualifies as significant." *John C. v. Saul*, No. 4:19-cv-04111-SLD-JEH, 2021 WL 794780, at *5 (C.D. Ill. Mar. 2, 2021). In *Weatherbee v. Astrue*, the Seventh Circuit found that 140,000 representative jobs in the national economy was "well above the threshold for significance," yet did not definitively identify an actual threshold. 649 F.3d 565, 572 (7th Cir. 2011); *see also Angela L. v. Saul*, No. 1:20-cv-00481-SEB-DML, 2021 WL 2843207, at *5 (S.D. Ind. July 7, 2021); *John C.*, 2021 WL 794780, at *5. In *Primm v. Saul*, the Seventh Circuit found that 110,000 jobs in the national economy was a significant number. 789 F. App'x 539, 546 (7th Cir. 2019). Also, in *Collins v. Berryhill*, the Seventh

6

Circuit found that just 55,000 jobs was a significant number of jobs nationally. 743 F. App'x 21, 25-26 (7th Cir. 2018).

But the *Primm* court relied on *Liskowitz*, a case involving regional, rather than national, numbers. *Primm*, 789 F. App'x at 546; *see Liskowitz*, 559 F.3d at 743 (finding that 4,000 jobs in the Milwaukee area was a significant number, and commenting that "it appears to be well-established that 1,000 jobs is a significant number" (collecting cases)). The *Collins* court, indirectly, did as well. 743 F. App'x at 25-26 (relying on *Brown v. Colvin*, 845 F.3d 247, 255 (7th Cir. 2016), which in turn relied on *Liskowitz*). At least one judge in this judicial circuit has indicated that "reliance on *Liskowitz*'s regional threshold is . . . suspect (and, by extension, so is the reliance on *Primm*)" when considering a claimant's argument challenging the number of national jobs identified. *James A. v. Saul*, 471 F. Supp. 3d 856, 859-60 (N.D. Ind. July 10, 2020). Therefore, while *Primm* and *Collins* provide some guidance, they are not without their vulnerabilities.

"[D]istrict courts within the circuit—applying national numbers—have found as many as 120,350 jobs to not meet the burden, and as few as 17,700 jobs to be significant." *Angela L.*, 2021 WL 2843207, at *5 (citing *John C.*, 2021 WL 794780, at *5); *compare Sally S.*, 2019 WL 3335033, at *11 (120,350 jobs nationally is not a significant number), *with Dorothy B. v. Berryhill*, No. 18 CV 50017, 2019 WL 2325998, at *7 (N.D. Ill. May 31, 2019) (17,700 jobs nationally is a significant number). Thus, this circuit lacks clear guidance on what constitutes a "significant number" of jobs in the national economy. *See Sundsmo v. Saul*, No. 20-cv-100-wmc, 2020 WL 6817112, at *7 (W.D. Wis. Nov. 20, 2020) (concluding 67,327 jobs nationally was a significant number, observing that "this court has no ready guidance, other than to note

7

that the ALJ's reliance of evidence of jobs in the national economy in the tens of thousands to find the claimant capable of full-time work appears consistent with decades of case law and the applicable regulations . . . ."); *see also Ellis v Kijakazi*, No. 20-CV-719, 2021 WL 3514701, at *5 (E.D. Wis. Aug. 9, 2021) (observing the "lack of clarity from the Seventh Circuit regarding . . . 'significant numbers'" when concluding that 14,500 nationally was not a significant number).

The undersigned Magistrate Judge faced a similar argument last year in *Knapp v. Saul*, No. 1:20-cv-00011-PPS-SLC, 2021 WL 536121, at *4-5 (N.D. Ind. Jan. 27, 2021), *R. & R. adopted by* 2021 WL 536483 (N.D. Ind. Feb. 12, 2021). There, I rejected the claimant's argument that 120,000 jobs nationally was not a significant number. *Id.* In doing so, I commented that "even when considering just the three jobs identified by the VE, the ALJ provided a sufficient number of jobs through his identification of 29,000 polishing machine operator jobs, 22,000 sorting machine operator jobs, and 16,500 wire insulator jobs." *Id.* at *4. Thus, at least in the facts presented in *Knapp* and under the law at the time, I viewed that 67,500 jobs in the national economy would still be a significant number of jobs. *Id.*; *see also Sundsmo*, 2020 WL 6817112, at *7 (finding that 67,327 jobs nationally was a significant number of jobs); *Angela L.*, 2021 WL 2843207, at *6 (finding that 53,200 jobs nationally was a significant number of jobs). Neither party here has presented me with a persuasive reason to depart from that viewpoint now.

Therefore, given my prior Opinion and Order in *Knapp*, and the lack of clarity in the circuit on the issue, I conclude that 89,000 jobs is a "significant number" of jobs for purposes of the ALJ's step-five determination in this case.

### D. Closed Periods of Disability

Kuhn also argues that the ALJ should have found a closed period of disability from March

2018 to at least March 2019 based on her lumbar spine impairment, and from August 2018 to at least November 2019 based on her psoriatic arthritis/psoriasis. (ECF 20 at 19). More specifically, Kuhn asserts that her "lumbar spine problems began about March 7, 2018, continued through an April 2018 spinal surgery, then through an August 2018 spinal surgery, then presumably through a reasonable time of healing until the resolution of the problem [in March 2019]." (*Id.* at 23 (footnotes omitted)). She further argues that "[i]f the description on November 7, 2019 is an indication of improvement [of her psoriatic arthritis/psoriasis] to the point of non-disability, this means that there was a closed period of disability from August 2018, or perhaps September 2018, up until November 2019." (*Id.* at 24).

"A claimant need not be disabled as of the date of the hearing or of the ALJ's decision in order to qualify for disability benefits." *Reed v. Colvin*, No. 1:14-CV-080 JD, 2015 WL 4921614, at *7 (N.D. Ind. Aug. 18, 2015) (collecting cases). "Rather, a claimant is entitled to disability benefits if they were disabled for any continuous period of at least 12 months." *Id.* (citations omitted). "Therefore, even if an ALJ finds that a claimant is not disabled as of the date of the decision, [she] must still consider whether the claimant was unable to engage in substantial gainful activity for any continuous period of at least 12 months since the alleged onset date." *Id.*

Here, contrary to Kuhn's assertion, the ALJ appropriately considered whether Kuhn was disabled at *any* point during the period ranging from her alleged onset date in January 2018 through the date of the ALJ's decision in February 2020. (AR 15-28). After proceeding through the five-step sequential process and analyzing the evidence of record, the ALJ concluded that "[t]he claimant has not been under a disability, as defined in the Social Security Act, from

9

January 16, 2018, through the date of this decision . . . ." (AR 27). While the ALJ did note that the record reflected "some improvement" (AR 22) in Kuhn's lumbar spine problems and her functioning by early 2019, the state agency physicians—upon which the ALJ relied (AR 25)—found as early as September 2018 (and again in February 2019) that Kuhn had the capacity to perform a limited range of sedentary work despite her impairments (AR 75-77, 88-91). Thus, the ALJ's decision "makes abundantly clear that the ALJ found the RFC to be in effect well within the 12-month period after [Kuhn's alleged onset date], as she relied substantially on evidence from within that period." *Reed*, 2015 WL 4921614, at *7. "[I]t necessarily follows that the ALJ concluded that [Kuhn] was not disabled for a period of at least 12 months following her [alleged onset date]"—whether due to her lumbar spine impairment, psoriatic arthritis/psoriasis, or otherwise. *Id.* (rejecting the claimant's argument that the ALJ failed to consider a closed period of disability where, even absent an express statement from the ALJ, it was clear that the ALJ believed the RFC was in effect before twelve months had passed after the accident).

And more specifically as to Kuhn's psoriatic arthritis/psoriasis, the ALJ penned two paragraphs on the condition, including its effect on her hands, but concluded that the impairment was non-severe. (AR 17-18 (citing AR 221, 494-527); AR 24-25 (citing AR 221, 494-527)). In arguing that she should receive a closed period of disability based on her psoriatic arthritis/psoriasis, Kuhn cites to just one treatment note from November 2019 that observed psoriatic plaques on her scalp. (ECF 20 at 23 (citing AR 533)). But Kuhn fails to point to any medical source opinion assigning her functional limitations based on her psoriatic arthritis/psoriasis, and it is not the Court's duty to scour the record in search of evidence to

support her arguments.  *See generally Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 702 (7th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in [the record]." (alteration in original) (citation omitted)).  To reiterate, in September 2018 and February 2019, the state agency physicians (upon which the ALJ relied) considered Kuhn's psoriasis (as well as her lumbar spine condition) when concluding that she retained the functional capacity to perform sedentary work.  (*See* AR 25, 76, 86, 89-91).

"It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability."  *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (citing 20 C.F.R. § 404.1512(c); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)).  Here, Kuhn has failed to carry her burden of producing medical evidence assigning her limitations based on her psoriatic arthritis/psoriasis, much less show that it was a disabling condition.[3]  Consequently, Kuhn's argument that she should receive closed periods of disability based on her psoriatic arthritis/psoriasis and her lumbar spine impairment is lacking in supporting evidence, and the Commissioner's final decision will be affirmed.

## IV.  CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED.  The Clerk is DIRECTED to enter a judgment in favor of the Commissioner and against Kuhn.

SO ORDERED.  Entered this 12th day of January 2022.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge

---

[3] Indeed, an October 2019 note reflects that Kuhn had a more than twenty-year history of psoriasis—which apparently did not prevent her from attending college or working during those years (*see, e.g.*, AR 26, 195)—and had "[n]ever been on any disease modifying drugs or biologics" (AR 495; *see also* AR 24).